UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

REGINALD C. HOWARD,

      Plaintiff,

  vs.

DANA COLE, *et al.*,

      Defendants.

Case No.: 2:23-cv-00673-GMN-MDC

**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**

Pending before the Court is the Motion for Summary Judgment, (ECF No. 42), filed by Defendants Travis Bradshaw, Sean Donahue, and Richard Vasquez.  Plaintiff Reginald Howard filed a Response, (ECF No. 45), to which Defendants filed a Reply, (ECF No. 48).

For the reasons discussed below, the Court GRANTS Defendants' Motion for Summary Judgment.

I.  **BACKGROUND**

This action arises from a series of informal grievances filed by Plaintiff Reginald Howard, an inmate incarcerated in the Nevada Department of Corrections ("NDOC"), who was formerly housed at Ely State Prison ("ESP"). (Compl. at 1, ECF No. 5); (Mot. Summ. J. 1:25–27, ECF No. 42).

 **A. Administrative Grievance Process in NDOC**

The process for filing administrative grievances in the NDOC is governed by Administrative Regulation ("AR") 740. (*See* AR 740, Ex. K to Mot. Summ. J., ECF No. 42-12).  AR 740 provides for three levels of grievance procedures available to inmates.  First, an inmate must file an Informal Grievance "after failing to resolve the matter by other means such as discussion with staff or submitting an inmate request form." (*Id.* at 9).  An inmate must file an Informal Grievance within six months of the action complained of for most claims,

including claims for personal injury and property loss. (*Id.* at 10). The prison administration must respond to the Informal Grievance within 45 calendar days, and the response should reference all policies, procedures, or circumstances that support the prison administration's finding. (*Id.* at 10–11).

Next, if an Informal Grievance is denied, an inmate may appeal that denial by filing a First Level Grievance within five calendar days of receipt of the denial. (*Id.* at 11). The inmate must "provide a justification to continue to the first level." (*Id.* at 12). A First Level Grievance that "does not comply with procedural guidelines" will be returned to the inmate using Form DOC-3098 ("Improper Grievance Memo"). (*Id.*). Finally, if a First Level Grievance is denied, an inmate may again appeal the denial by filing a Second Level Grievance within five calendar days of receipt of the denial of the First Level Grievance. (*Id.* at 13). However, there is a difference between the denial of a Grievance and the administration's decision to "not accept" it. If the administration does not accept a Grievance, "the inmate may not appeal that decision to the next procedural level." (*Id.* at 5). Instead, the inmate must refile the Grievance at the same level and cure the identified deficiencies before proceeding to next level. (*Id.*). The administration may decide not to accept a Grievance for several reasons. (*See id.* at 5–14).

Outside of this process, an inmate may also file an Emergency Grievance to notify prison officials of either a life-threatening situation for the inmate or a "Safety and Security risk for the institution." (*Id.* at 8).

**B. Grievances Filed by Plaintiff at ESP**

Plaintiff filed an Emergency Grievance on August 28, 2021, stating that on each day of that month, he was intentionally not served a meal or a portion of a meal in an attempt by prison staff to cause Plaintiff discomfort when he took medication on an empty stomach. (Grievance 2006-31-28221 at 9, Ex. A to Mot. Summ. J., ECF No. 42-2). This emergency grievance was denied because Plaintiff had failed to notify staff when the meal issue occurred,

leading the reviewing supervisor to conclude that the situation was "[n]ot an emergency." (*Id.*). Plaintiff then filed his First Informal Grievance on August 29, 2021, again asserting that he had been intentionally denied meals or portions of meals on each day in August. (*Id.* at 3). Defendant Donahue was assigned to investigate the grievance and denied it because camera footage showed that Plaintiff appeared to receive all meals on August 29, 2021. (Grievance History at 14, Ex. B to Mot. Summ. J., ECF No. 42-3). Plaintiff signed a copy of the denial of the grievance to signal his disagreement with the result, but did not file a First Level Grievance (*Id.*).

Both grievances named Defendant Dana Cole, a Senior Correctional Officer at ESP, and claimed that Plaintiff had reported the missing meals to him to no avail. (*Id.*); (Grievance 2006-31-28221 at 9, Ex. A to Mot. Summ. J.). In his Second Informal Grievance filed on September 7, 2021, Plaintiff alleges that on August 29, 2021, when Defendant Cole saw his name in Plaintiff's First Informal Grievance, he retaliated by shouting in Unit 6B of ESP (where Plaintiff was housed at the time) that Plaintiff "should be [in Protective Custody]" and is a "snitch." (Resp. at 3, ECF No. 45); (*see* Grievance History at 3–4, Ex. B to Mot. Summ. J., ECF No. 42-3). Defendant Donahue was again assigned to review this grievance and denied it because Plaintiff had failed to identify a harm or loss, and because the requested remedy, an investigation, was improper. (Grievance 2006-31-28335 at 11, Ex. I to Mot. Summ. J., ECF No. 42-10).

Plaintiff thereafter appealed that denial by filing a First Level Grievance, stating that the remedy sought was proper and that the very fact that Defendant Cole had marked Plaintiff as a "snitch" caused him harm. (*Id.* at 10). Plaintiff's First Level Grievance was not accepted by Acting Associate Warden Tasheena Cooke, who issued Plaintiff an Improper Grievance Memo explaining that his First Level Grievance was deficient because it failed to identify a harm or loss. (*Id.* at 9). The Memo also explained that Plaintiff was to re-submit his Grievance "at the

same level" after curing that deficiency. (*Id.*).  Instead, Plaintiff filed a Second Level Grievance in which he explained that the harm suffered was "a First Amendment constitutional violation of retaliation." (*Id.* at 4).  Plaintiff's Second Level Grievance was reviewed by Associate Warden James Scally, who did not accept it and issued another Improper Grievance Memo. (*Id.* at 2).  That Memo explained that Plaintiff's Second Level Grievance was "out of turn," and that Plaintiff could not proceed to the Second Level if the First Level Grievance was not accepted. (*Id.*).

On September 14, 2021, Plaintiff filed a Third Informal Grievance, stating that Defendant Cole had again shouted in Unit 6B that Plaintiff was a snitch and requesting that video footage of the event be saved and that prison officials "investigate this claim as soon as possible." (Grievance 2006-31-29864 at 33, Ex. C to Mot. Summ. J., ECF No. 42-4).  This grievance was reviewed by C. Rigney, a prison official not named in this action, who denied it because there was "no evidence" to support Plaintiff's claim and Plaintiff had "not cited any harm or loss." (*Id.* at 32).

Plaintiff then appealed his Third Informal Grievance by filing a First Level Grievance, alleging that being labeled a "snitch" caused him great harm, and stating that Defendant Cole's actions should have been investigated and stopped by prison officials. (*Id.* at 31).  Plaintiff's First Level Grievance was reviewed by Acting Associate Warden Tasheena Cooke, who again declined to accept it and issued an Improper Grievance Memo. (*Id.* at 30).  The Memo explained that Plaintiff's First Level Grievance was deficient because Plaintiff failed to identify his requested remedy, and again instructed Plaintiff to resubmit the Grievance at the same level after curing this deficiency. (*Id.*).  Thereafter, Plaintiff filed a Second Level Grievance, stating that multiple witnesses had overheard Defendant Cole make the alleged statements. (*Id.* at 27).  Plaintiff's Second Level Grievance was reviewed by Associate Warden James Scally and was not accepted because the First Level Grievance was again "out of turn." (*Id.* at 25).

**C. Plaintiff's Transfer to High Desert State Prison**

On October 13, 2021, Plaintiff was transferred from ESP to High Desert State Prison ("HDSP"). (Property Forms at 6, Ex. F to Mot. Summ. J., ECF No. 42-7).  On the day before his transfer, Plaintiff received a Transportation Notice which informed him that he was permitted to bring one train bag, one personal box, three legal boxes, and three appliances that did not fit in his boxes or bags. (*Id.* at 5).  Plaintiff appears to allege that he attempted to bring four boxes with him during his transfer to HDSP: three legal boxes and one religious box. (Resp. 6:2–7).  Although four boxes were permitted by NDOC regulations, Plaintiff claims that all four boxes were seized and never returned to him. (*Id.* 6:11–27).  Defendants dispute this account, arguing that Plaintiff had a total of seven legal boxes at ESP, and left four of them behind to comply with NDOC regulations. (Mot. Summ. J. 6:11–18 (citing Property Forms at 6–7, Ex. F to Mot. Summ. J.)).  Defendants further contend that the four legal boxes that Plaintiff left behind at ESP were returned to him in November of 2021. (Property Forms at 7, Ex. F to Mot. Summ. J.).

On the day after his transfer, Plaintiff filed a Fourth Informal Grievance, complaining that four of his legal boxes, which he contends were approved for transfer, were instead seized and destroyed. (Grievance 2006-31-30321 at 9–10, Ex. J to Mot. Summ. J.).  Plaintiff's Fourth Informal Grievance was rejected because he had failed to attach the required DOC-3026 claim form. (*Id.* at 2–3).  Plaintiff thereafter resubmitted the grievance in February of 2022, but it was again denied for the same reasons. (Grievance History at 10, Ex. B. to Mot. Summ. J.).  Plaintiff did not file a First Level or Second Level Grievance after the denial. (*See generally* Grievance 2006-31-30321, Ex. J to Mot. Summ. J.).

///

///

///

**D. Procedural History**

Plaintiff filed this action in April of 2023 asserting six[1] claims under 42 U.S.C. § 1983: (1) First Amendment retaliation against Defendant Cole; (2) Eighth Amendment failure to protect against Defendant Cole; (3) Eighth Amendment failure to protect against Defendant Donahue; (4) First Amendment retaliation against Defendant Cole;[2] (5) Eighth Amendment failure to protect against Defendant Donahue;[3] and (6) First Amendment retaliation against Defendants Bradshaw, Vasquez, Garner, and Lamps. (*See generally* Compl.).

While Plaintiff properly served Defendants Donahue, Bradshaw, and Vasquez with his Complaint, (*see* Acceptance of Service, ECF No. 16), Defendants Cole, Garner, and Lamps have not been served. (*See* Order, ECF No. 20); (Summons Returned Unexecuted, ECF No. 25). Defendants Donahue, Bradshaw, and Vasquez now move for summary judgment on all claims asserted against them.

## II. <u>LEGAL STANDARD</u>

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.* "The amount of evidence necessary to raise a

---

[1] Plaintiff originally asserted seven claims in his Complaint, but one of those claims was dismissed during the screening process. (*See* Screening Order 10:27–11:2, ECF No. 4).

[2] Plaintiff's first and fourth claim differ only in the conduct that they are directed towards. Claim one alleges First Amendment retaliation by Defendant Cole for his calling Plaintiff a "snitch" on August 19, 2021, while claim four alleges the same for Defendant Cole's calling Plaintiff a "snitch" on September 14, 2021. (*See* Compl. at 4, 6).

[3] Similarly, Plaintiff's third claim for Eighth Amendment failure to protect targets Defendant Donahue's failure to take steps to protect Plaintiff after the August 2021 incident, whereas Plaintiff's fifth claim targets Defendant Donahue's failure to take steps to protect Plaintiff after the September 2021 incident. (*See* Compl. at 4–6).

genuine issue of material fact is enough 'to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983) (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288–89 (1968)). "Summary judgment is inappropriate if reasonable jurors, drawing all inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's favor." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims or defenses." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal citation and quotation marks omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied, and the court need not consider the nonmoving party's evidence. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute,

the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). However, the nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply show that there is some metaphysical doubt as to the material facts," *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 783 (9th Cir. 2002). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252. In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249. The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

## III. DISCUSSION

Defendants first argue that they are entitled to summary judgment on all of Plaintiff's claims because he failed to exhaust his administrative remedies, before turning to the merits of Plaintiff's claims. The Court begins by addressing Defendants' exhaustion argument.

///

///

**A. Exhaustion of Administrative Remedies**

The Prison Litigation Reform Act ("PLRA") states that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).  These administrative remedies are typically comprised of the prison's grievance system.  Proper exhaustion under the PLRA requires "using all steps the agency holds out, and doing so *properly* (so the agency addresses the issues on the merits)." *Woodford v. Ngo*, 548 U.S. 81, 89 (2006) (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)) (internal quotations omitted) (emphasis in original).  Thus "[s]ection 1997e(a) requires an inmate not only to pursue every available step of the prison grievance process but also to adhere to the 'critical procedural rules' of that process." *Reyes v. Smith*, 810 F.3d 654, 657 (9th Cir. 2016).  "[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones v. Block*, 549 U.S. 199, 218 (2007).

In Nevada, AR 740 provides the grievance procedure that Nevada inmates must follow to exhaust administrative remedies. *See, e.g.*, *Isham v. Aranas*, No. 3:16-cv-00696-MMD-WGC, 2019 WL 3269312, at *4 (D. Nev. June 10, 2019), *report and recommendation adopted*, 2019 WL 3280987 (D. Nev. July 18, 2019).  As explained above, (*see* Section (I)(A)), AR 740 provides three levels of grievances that must be exhausted by inmates—an inmate must file an Informal Grievance, a First Level Grievance, and a Second Level Grievance. (*See* AR 740 at 10–15, Ex. K to Mot. Summ. J.).  If an inmate's Grievance is granted "at any level, the grievance process is considered complete and the inmate's administrative remedies exhausted." (*Id.* at 6).

Defendants contend that none of Plaintiff's claims against them were properly exhausted.  The Court addresses each in turn.

### 1. Claims for Eighth Amendment Failure to Protect Against Defendant Donahue

Plaintiff's third and fifth claims assert an Eighth Amendment failure to protect violation against Defendant Donahue. (Compl. at 4–6).  Plaintiff's third claim is directed towards Defendant Donahue's alleged failure to take action in response to his Second Informal Grievance alleging that Defendant Cole had called Plaintiff a "snitch" in Unit 6B in August 2021. (*See id.* a 4–5).  Plaintiff's fifth claim is directed towards Donahue's failure to take action in response to Plaintiff's Third Informal Grievance alleging that Defendant Cole again called Plaintiff a "snitch" in September 2021. (*Id.* at 6).

### a. Claim Three

Defendants argue that Plaintiff failed to exhaust his administrative remedies with respect to this claim because he (1) failed to identify any harm he suffered from the alleged conduct, (2) failed to provide a remedy for the alleged conduct, and (3) attempted to file a Second Level Grievance without curing the procedural deficiencies of his First Level Grievance. (Mot. Summ. J. 15:1–13).  In Response, Plaintiff argues that the harm he suffered from being labeled a "snitch" was obvious, and that he sought the remedy of an investigation in his Second Informal Grievance. (*See* Resp. 18:3–19:13).[4]  Plaintiff further contends that he exhausted all administrative remedies which were available to him, and "submitted correctly all seven grievances." (*Id.*).

Upon review of the record, Plaintiff failed to exhaust his administrative remedies with respect to claim three.  Here, the grievances Plaintiff filed relating to this claim were procedurally deficient.  After his First Level Grievance was not accepted for failing to state a

---

[4] Plaintiff does not address Defendants' arguments regarding his failure to exhaust his administrative remedies on a claim-by-claim basis—the arguments summarized here account for Plaintiff's sole response to this argument. (*See generally* Resp.).

harm or loss, Plaintiff was instructed to refile his grievance at the First Level after curing the deficiency. (Grievance 2006-31-28335 at 9, Ex. I to Mot. Summ. J.).  Plaintiff instead attempted to proceed directly to the Second Level without refiling at the First Level, and his Second Level Grievance was not accepted on that basis. (*Id.* at 2).  In order to exhaust his administrative remedies under the PLRA, Plaintiff must "adhere to the 'critical procedural rules'" of the prison's grievance process. *Reyes*, 810 F.3d at 657.  The AR 740 requires inmates to complete all grievances through the second level, which Plaintiff failed to do here. *See, e.g.*, *Brady v. Estill*, No. 3:20-cv-00174-RCJ-CSD, 2023 WL 7170506, at *3 (D. Nev. Sept. 22, 2023) (granting summary judgment where plaintiff failed to complete grievance underpinning his claims through the second level).

While the Court acknowledges the cumbersome nature of the grievance process, at each stage in that process, Plaintiff was given explicit instructions on how to cure the procedural deficiencies in his grievances, which he failed to follow.  To exhaust his administrative remedies, Plaintiff must refile a grievance not accepted by prison officials at the same level before proceeding to the next level.  By showing that Plaintiff failed to do that here, Defendants meet their burden of negating an essential element of Plaintiff's claim.  The Court further finds that Plaintiff has failed to meet his burden of establishing a genuine dispute of material fact with respect to the exhaustion of administrative remedies.  Plaintiff offers the conclusory statement that he filed "all seven grievances correctly," but does not address the procedural deficiencies present in each.

Because Defendants have shown that Plaintiff did not properly complete the grievance underpinning this claim through the second level, the Court finds that his administrative remedies were not exhausted.  Accordingly, the Court GRANTS Defendants' Motion for Summary Judgment on this claim.

///

### b. Claim Five

Defendants argue that Plaintiff failed to exhaust his administrative remedies with respect to this claim for the same reasons. After Plaintiff's Third Informal Grievance was denied, and his First Level Grievance was not accepted, Plaintiff attempted to proceed directly to the second level without curing the deficiencies of his First Level Grievance. (Mot. Summ. J. 15:15–22). Further, as Defendants point out, Plaintiff's Third Informal Grievance was not reviewed by Defendant Donahue, but by C. Rigley, who is not named in this action. (*See* Grievance 2006-31-29864 at 32, Ex. C to Mot. Summ. J.). Defendants have again met their burden of negating an essential element of Plaintiff's claim, and Plaintiff has failed to generate a genuine dispute of material fact in response. Plaintiff again offers no argument disputing Defendants' contention that he failed to follow the prison grievance process and does not mention the fact that it was C. Rigney, not Defendant Donahue, who reviewed the grievance relevant to claim five. Thus, the Court again finds that Plaintiff has failed to exhaust his administrative remedies with respect to this claim. Accordingly, the Court GRANTS Defendants' Motion for Summary Judgment on this claim.

### 2. Claim for First Amendment Retaliation Against Defendants Bradshaw, Vasquez, Garner, and Lamps

Defendants argue that Plaintiff failed to exhaust his administrative remedies with respect to this claim because Plaintiff's Fourth Informal Grievance was not accepted as procedurally deficient three times. (Mot. Summ. J. 15:27–16:8 (citing Grievance 2006-31-30320 at 2–10)). Specifically, Plaintiff's Grievance was rejected because (1) Plaintiff failed to use the informal kite process to attempt to resolve the issue before filing a grievance, (2) Plaintiff failed to attach a DOC-3027 form to his Informal Grievance, and (3) Plaintiff failed to proceed to the First Level after his Informal Grievance was denied. (*Id.*).

The Court agrees with Defendants that Plaintiff has failed to exhaust his administrative remedies with respect to this claim.  The purpose of requiring an inmate plaintiff to comply with all procedural steps in the grievance process is to ensure that "the agency addresses the issues on the merits." *Woodford*, 548 U.S. at 89.  Here, Plaintiff's Fourth Informal Grievance was procedurally deficient because he failed to utilize the informal kite process prior to filing the Grievance, and because he failed to attach a document required by AR 640 for all claims relating to personal property damage. (*See* AR 740 at 4, 9, Ex. K to Mot. Summ. J.).  Further, Plaintiff again failed to complete his Fourth Informal Grievance through all three levels as required by AR 740. *See Brady*, 2023 WL 7170506, at *3.  Thus, Defendants have met their burden of negating an essential element of Plaintiff's claim.

The Court again finds that Plaintiff has failed to meet his burden of establishing a genuine dispute of material fact with respect to this claim.  Plaintiff does not contend that he properly utilized the informal kite process prior to filing this grievance, nor that he completed his Fourth Informal Grievance through the second level.  Instead, Plaintiff instead contests the number of boxes that he possessed at ESP, claiming that he only possessed four boxes instead of seven. (Resp. 6:2–7).  However, even if the Court were to credit that assertion, it would remain undisputed that Plaintiff failed to comply with the procedural requirements of the grievance process. Accordingly, the Court GRANTS Defendants' Motion for Summary Judgment on this claim.[5]

///

///

///

///

---

[5] Because the Court concludes that Plaintiff has failed to exhaust his administrative remedies with respect to all claims asserted against the moving Defendants, it need not address the remainder of Defendants' arguments.

IV.   **CONCLUSION**

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment, (ECF No. 42), is **GRANTED**.

The Clerk of Court is kindly directed to enter judgment in favor of Defendants Donahue, Bradshaw, and Vasquez.

**DATED** this __30__ day of March, 2026.

_____
Gloria M. Navarro, District Judge
United States District Court